IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

DONNIE R. CALLAHAN, )
 )
        Plaintiff, )
 )
vs. ) Case No. 12-3393-CV-S-ODS
 )
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security, )
 )
        Defendant. )

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

### I. BACKGROUND

Plaintiff was born in January 1962, completed the sixth grade, and has prior work experience as an assembler, furniture mover, and warehouse supervisor. He stopped working in September 2008 due to a combination of pain and anxiety, and filed a claim for disability benefits alleging he became disabled on September 19, 2008. The claim was denied on February 26, 2010, and that decision was affirmed in an Order issued by the Honorable Dean Whipple on May 17, 2011. Judge Whipple's decision was not appealed.

After the administrative denial in February 2010, Plaintiff filed a second application for disability and supplemental security income benefits, alleging an onset date of February 27, 2010. The second application was denied, and this denial forms the basis for the present suit. While the time periods covered by the two applications do not overlap, Plaintiff has occasionally referenced evidence from the prior time period to

support his present claim. However, the Court's discussion will focus on Plaintiff's condition during the relevant time period, which is from February 27, 2010, forward.

Judge Whipple's Order indicates Plaintiff was found to suffer from diabetes with diabetic peripheral neuropathy, arthritis in the left shoulder, and anxiety at the time of the ALJ's decision in February 2010. The month prior Plaintiff's doctor – Dr. Robert Martin – had addressed Plaintiff's complaints of knee and shoulder pain. The pain was described as "gradual" and "occurring in a persistent pattern for yours" and the severity was "moderate." Dr. Martin administered an injection in Plaintiff's shoulder, prescribed a steroid, and suggested an x-ray of the knee. Plaintiff was directed to return in three months. R. at 329-31.

At that appointment in April 2010, Plaintiff complained of gradually increasing hip pain. X-rays revealed mild to moderate degenerative changes, but no treatment was prescribed and Plaintiff was directed to return in two months. R. at 396-97. On that same day, Dr. Martin completed a Medical Source Statement-Physical ("MSS-Physical") indicating Plaintiff could occasionally lift five pounds and frequently carry less than five pounds, stand and walk continuously for less than fifteen minutes and for a total of one hour per day, sit continuously for thirty minutes and two hours per day, needed to avoid exposure to a multitude of environmental factors, needed to lie down three times per day for thirty minutes at a time, and that side effects from medication decreased Plaintiff's ability to concentrate or maintain persistence or pace. R. at 338-39.

Later in April, Plaintiff went to the orthopedic clinic at Ozarks Medical Center ("OMC") for treatment for his hip. He was diagnosed with "moderate degenerative joint disease" in both hips "with the left hip more symptomatic" and was administered a steroid injection in his left hip. The administering doctor recommended that Plaintiff return in three months for a possible reinjection. R. at 354. Plaintiff returned in

Plaintiff returned to Dr. Martin in June. The doctor's notes from the visit do not say anything about Plaintiff's hip; the focus of this visit was to evaluate Plaintiff's gout, hypertension, diabetes, and shoulder pain. Plaintiff's treatment was not changed, and Plaintiff was instructed to return in three months. Dr. Martin's notes also reflect that Plaintiff was scheduled for an MRI on his shoulder in two days. R. at 387-88.

Plaintiff went to OMC for the MRI on his left shoulder. The MRI revealed mild

2

enlargement in the joint but no encroachment was observed. The MRI also revealed tendinitis and a tear and cyst in the labrum. R. at 352. In July, a doctor at OMC – Dr. David Denenny – performed surgery to alleviate the damage. R. at 349-50. In late September or early October, Dr. Denenny described Plaintiff's shoulder as "doing well – not terrific but patient satisfied." R. at 422. Later in October, Plaintiff returned to OMC for another MRI on his hips. The findings were normal and unremarkable. R. at 348.

Plaintiff continued seeing Dr. Martin regularly for a host of ailments unrelated to his shoulder and hips. Included among these ailments were complaints of foot pain; Dr. Martin directed Plaintiff to use a cane, R. at 376-77, and Dr. Denenny began addressing Plaintiff's foot problems as well. R. at 421. In late November 2010, Plaintiff saw Dr. Martin for treatment of diabetes and also complained of anxiety and arthritis that had been "gradual and . . . occurring in a persistent pattern for months" affecting his foot, shoulders, hip, ankle, neck and hands." Dr. Martin addressed Plaintiff's diabetes and prescribed Cymbalta for anxiety, but made no particular diagnosis or prescription for Plaintiff's complaints of pain. R. at 374-75.

In November, Plaintiff saw a psychologist, Steven Adams, for a consultative exam. The examiner concluded Plaintiff's GAF was 55 and suggested he seek individual psychotherapy. With respect to Plaintiff's ability to work, he stated Plaintiff could "understand and remember simple, but not complex instructions" and Plaintiff's "poor concentration may cause difficulties in completing moderately comple[x] tasks. Demanding social situations pose significant stress [but Plaintiff] seems able to adapt to a typical work situation. R. at 357-59.

Plaintiff also saw a podiatrist, Dr. Mark Johnson, in November. He prescribed orthotics for Plaintiff to use. R. at 362-64.

In late December, Dr. Martin completed a Mental Source Statement–Mental ("MSS-Mental") indicating Plaintiff was markedly limited in his ability to understand, remember, and carry out detailed instructions and complete a normal workday without interruption from psychological symptoms. The MSS-Mental also indicates Plaintiff is moderately limited a variety of areas, including his ability to maintain attention and concentration for extended periods of time, maintain attendance and adhere to a schedule or routine, work in coordination with others, make simple work-related

3

decisions, interact appropriately with the public, get along with co-workers, respond appropriately to changes in the work setting. R. at 412-13.

In February 2011, Plaintiff returned to Dr. Johnson for re-evaluation of his foot. Plaintiff reported that the pain had diminished. Dr. Johnson adjusted the orthotics and made additional recommendations (such as advising Plaintiff to stop smoking and continue daily foot inspections. R. at 433-34.

Later in February – four days before the administrative hearing in this case – Dr. Martin completed another MSS-Mental. This reflected Plaintiff's ability to understand, remember and carry out detailed instructions had improved from "markedly limited" to "moderately limited," but Plaintiff's ability to maintain attention and concentration for extended periods of time had worsened to "markedly limited." Other areas also showed an inexplicable change between "not significantly limited" and "moderately limited," with indications Plaintiff improved in some areas and regressed in others. R. at 438-39.

At the hearing, Plaintiff testified he experiencing pain in his shoulders, hips and feet. R. at 77. The pain is exacerbated by sitting, walking, and using his left arm. R. at 82. (Plaintiff is right-hand dominant. R. at 79-80). His hip caused him difficulty entering and exiting his car, and standing for too long makes his feet burn and sting. R. at 82. Excessive use of his left arm (such as when driving) causes his shoulder to hurt. R. at 82-83. Plaintiff also testified that when he goes shopping (which he does a couple of times a week), he has difficulty being around other people; he gets nervous and experiences "a funny feeling" and just does not like being around other people. R. at 83.

Plaintiff testified about his activities. He described a typical day as getting up, eating breakfast, and lying back down. While he does chores around his house (such as laundry, vacuuming, dusting, and other normal household chores), he spends most of his time lying down and watching television, which he will do for ten to fourteen hours per day. R. at 80. He denied performing chores on "bad days," which he described as occurring three days per week. On those days, he lies in bed all day. R. at 84. However, Plaintiff also testified he tends to plants in his yard during the summertime, R. at 80, 83, mows his lawn with a riding lawnmower and shovels the snow during the winter, R. at 81, and keeps his mother's house clean. R. at 81-82.

4

The ALJ posed questions to a vocational expert ("VE"). The first hypothetical asked the VE to assume a person of Plaintiff's age, education and experience who could perform sedentary work and was further limited to simple, routine and repetitive tasks and needed to avoid environmental extremes. The hypothetical included other exertional limitations, such as no overhead reaching with the left arm, only occasional use of stairs and ramps, no more than occasional stooping, kneeling, or crouching, no more than occasional interaction with others, and no use of ladders, ropes or scaffolding. The VE testified such an individual could not perform their past work, but could perform work as a wire wrapper, production checker, or printed circuit board inspector. R. at 86-87. The ALJ then changed the hypothetical by adding a requirement that the person use a can when walking, and the VE testified the person could perform the jobs previously indicated. R. at 87.

The ALJ found Plaintiff's residual functional capacity ("RFC") was consistent with the hypothetical, including the requirement that Plaintiff use a cane when walking. R. at 60. In making this finding, the ALJ found Plaintiff's testimony was not fully credible, based largely on differences between his claimed limitations and his admitted activities. For instance, the ALJ noted Plaintiff's claim that he could maintain concentration for only fifteen minutes, yet spent as much as fourteen hours watching television. Plaintiff's ability to tend to his flowers, maintain his house and his mother's house, mow the lawn (albeit in a riding mower), and shovel snow also contradicted Plaintiff's testimony. Finally, the ALJ noted Plaintiff's physical ailments were alleviated with treatment: shoulder surgery and orthotics effectively alleviated his pain, and there were no further complaints about hip after the injections were administered. R. at 62. The ALJ also discounted Dr. Martin's medical source statements. With respect to the MSS-Mental, the ALJ noted Dr. Martin was not a specialist in mental health care and his opinions conflicted, both with each other and with Dr. Adams' opinions. R. at 62. The ALJ also found Dr. Martin's separate MSS-Physicals contradicted each other, and further noted Dr. Martin's opinions were undercut by Plaintiff's testimony about his activities. R. at 63. Based on her findings about Plaintiff's RFC and the VE's testimony, the ALJ found Plaintiff retained the functional capacity to perform work in the economy.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

### A. Failure to Defer to Dr. Martin's Opinion

Plaintiff contends the ALJ erred in failing to defer to Dr. Martin's medical source statements. Generally speaking, a treating physician's opinion is entitled to deference. This general rule is not ironclad; a treating physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record. E.g., Anderson v. Astrue, 696 F.3d 790, 793-094 (8th Cir. 2012); Halverson v. Astrue, 600 F.3d 922, 929-30 (8th Cir. 2010). There are a number of factors justifying the ALJ's decision not to defer to Dr. Martin, all of which were described in Part I and need not be detailed here. In summary, (1) Dr. Martin's assessment was contradicted by other evidence in the Record, including Plaintiff's own testimony, (2) Dr. Martin's opinions were not supported by clinical data or testing, (3) other doctors more familiar with Plaintiff's shoulder, hip and foot rendered opinions inconsistent with Dr. Martin's, and (4) Dr. Martin's opinions were not supported by his own treatment notes.

6

### B. Assessment of Plaintiff's Credibility

Plaintiff contends the ALJ improperly assessed his credibility. However, Plaintiff does not explain exactly what error occurred. Beyond stating the ordinary principles regarding assessment of a claimant's credibility, the thrust of Plaintiff's argument seems to be that the ALJ's written RFC did not include all of Plaintiff's complaints. This fact, alone, does not demonstrate the ALJ erred – but this is really all that Plaintiff offers to substantiate his argument. The point is rejected.

### C. Determination of Plaintiff's RFC

Plaintiff seems to argue that after deciding not to defer to Dr. Martin, the ALJ lacked any basis for ascertaining Plaintiff's RFC. This is not true. While "a claimant's RFC is a medical question, . . . in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively." Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007). It is simply not true that the RFC can be proved *only* with medical evidence. Dykes v. Apfel, 223 F.3d 865, 866 (8th Cir. 2000) (per curiam). Evidence of Plaintiff's actual daily activities and the medical evidence that existed from Plaintiff's other doctors was sufficient to support the ALJ's determination about Plaintiff's capabilities.

### III. CONCLUSION

The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

                                                /s/ Ortrie D. Smith
                                                ORTRIE D. SMITH, SENIOR JUDGE
DATE: June 14, 2013                    UNITED STATES DISTRICT COURT